CORNELIUS JONES *versus* INHABITANTS OF OXFORD COUNTY.
HOOPER CONANT *versus* Same.

Where a highway had been duly located by the joint adjudication and action of the County Commissioners of several counties, their subsequent action, under the original petition, declaring a portion of such location discontinued, because the damages awarded by a jury or committee, to the land owners, were excessive, is unauthorized and void.

Nor, can the Commissioners of the County in which a portion of such highway is located, legally discontinue any part thereof, if they deem the damages awarded to the owners of land excessive.

The county in which procedings for the location of a highway were commenced and closed, are alone liable for damages to the land owners, although, before the road was completed, that part of the county embracing the location had been set off and annexed to another county.

DEBT, upon judgment rendered by the County Commissioners for the county of Oxford. The actions were commenced March 27, 1857. The averments in the writs are the same, and are in substance that Alvin Leavitt and others, by their petition in writing to said Commissioners, at their session held in September, 1851, prayed for certain alterations, new locations and discontinuances in the highway leading from Farmington, in the county of Franklin, to Livermore Falls, thence on the westerly side of Androscoggin river, by the way of Turner bridge and Lewiston Falls, to Portland; and the said Commissioners being satisfied, that inquiry into the merits of their application was expedient, requested a meeting of the other counties affected, and having given legal notice of the time and place of the meeting, met the Commissioners of the counties of Cumberland, Kennebec and Franklin, and other persons interested; and the said Com-

missioners, by their joint action and adjudication, adjudged and determined, that the prayer of the petitioners be granted in part, to wit, &c., &c.

Whereupon the said Commissioners of said County of Oxford proceeded to lay out, alter and discontinue said highway agreeably with said joint adjudication and the requirements of law, and awarded damages to individuals sustaining damages thereby, to wit, &c.

And the Commissioners ordered that said damages be paid out of the treasury of the county of Oxford, in two years from the time when proceedings on the aforesaid petition should be closed, or when said road should be opened; a report of which doings of the Commissioners of the several counties above named, jointly, and of the doings of the Commissioners of the county of Oxford, was made at the May term of the Commissioners' Court of said county of Oxford, A. D. 1852, and said petition continued to the May term of said Court, A. D. 1853, when Hooper Conant, Cornelius Jones, (and others,) being aggrieved by the decision of said Commissioners, in estimating damages, presented their petitions for redress, and the original petition was further continued till the September term of said Commissioners' Court, for said county of Oxford, A. D. 1853; at which time, said petitioners, for increase and redress of damages, having severally agreed with the parties adversely interested, to have the same determined by a committee, and said committees having been duly appointed under the direction of said Commissioners; and, after due notice to all parties interested, and to whom notice by law is required, said committees having met and heard the several parties; and, having estimated and determined the damages to the several petitioners, to be as follows, to wit: — to Cornelius Jones, fifty dollars, to Hooper Conant, forty-five dollars, to, &c., &c.

. And, having made and duly returned to said Commissioners, reports of their doings, and of the aforesaid estimates and awards of damages, at their regular term held in September, A. D. 1853; said report and award of damages in favor of

the plaintiff, was accepted by said Commissioners, and duly recorded; and the proceedings on the original petition of Alvin Leavitt and others, were closed, and the record of the proceedings on said original petition completed; as by the record thereof, now remaining in said Court of County Commissioners, within and for said county of Oxford, will fully appear. And the plaintiff avers that two years from the time when proceedings on said original petition of Alvin Leavitt and others, were so closed, have long since elapsed; that said road has been opened, and his land actually taken for the same; of which, the defendants have had due notice; that after said two years had elapsed, and after said road had been open, and the plaintiff's land actually taken therefor; and thirty days, at least, before the bringing of this suit, to wit: on the seventeenth day of February, A. D. 1857, demand for the payment of said damages, due to the plaintiff as aforesaid, was made on the treasurer of said county of Oxford, and he neglected and refused to pay the same. Whereby an action of debt hath accrued to the plaintiff to have and recover of the said defendants, the aforesaid sum of fifty dollars, together with all costs taxed in his favor.

At the April term, 1858, the parties agreed upon the following report and statement of facts : —

"All the facts stated in the first count of the plaintiff's declaration are true, with this qualification, that, at the said September term of said Commissioners' Court, 1853, the said Commissioners, being of opinion that that portion of the foregoing location, described in the proceedings hereinafter set forth, ought not to be laid out subject to such high damages, and they therefore ordered it to be entered of record, that they consider and adjudge that the prayer of the petition of Alvin Leavitt and others be, for the reason aforesaid, denied in part, as is set forth in the following report, to wit:

"Pursuant to a notice given to the joint boards of the Commissioners of the counties of Oxford, Cumberland, Kennebec and Franklin, to meet at the house of Hooper Conant, in Turner, in the county of Oxford, for the purpose of taking

into consideration the excessive damages awarded to individual land holders by the several committees agreed upon for the purpose of increasing the award of the Commissioners, who located or altered the road on petition of Alvin Leavitt and others. And we, the Commissioners of the several counties abovenamed, having met at the abovenamed place on the 20th day of September, 1853, and duly considered the matter of excessive damage in the above premises, do hereby adjudge and determine that the damage awarded by the said committees is in part excessive, and that the road located on said petition be discontinued in part, viz.: commencing at Seth Bradford's north line, in Turner, and extending said discontinuance to the northerly line of land formerly owned by Lazarus LeBarron, in said Turner. Given under our hands this 21st day of September, 1853. [Signed by the Commissioners of the counties of Cumberland, Oxford, Franklin and Kennebec.]

"Pursuant to the foregoing joint adjudication, we, the County Commissioners of Oxford county, hereby revoke all damages awarded to owners and occupants of land on the foregoing described discontinued road alterations. [Signed by the Commissioners of Oxford county.]

"This report was made at the present term, accepted and ordered to be recorded. It is, therefore, considered by the Court that the prayer of the petitioners be denied as to that portion of the road lying between Seth Bradford's north line, in Turner, and the northerly line of land formerly owned by Lazarus LeBarron aforesaid, and that the remainder of the foregoing location be established as a 'public highway;' which appears by, and is a part of said record mentioned in plaintiff's writ.

"The land of the plaintiff Jones, is affected only by that portion of the aforesaid location that was discontinued, or attempted to be discontinued, by the aforesaid order of the Commissioners."

[The location that was attempted to be discontinued, did not affect the land of the plaintiff Conant.]

" It is the object of the parties, by this report and agreed statement of facts, to present to the Court, for a decision, the following questions, to wit : —

" *First*, was it competent for the Commissioners, in manner and form aforesaid, to reject or discontinue a portion of said location, for excessive damages ?

" *Second*, if such order and adjudication for discontinuance was illegal, would the entire location stand, or would the whole be thereby defeated ?

" *Third*, if entitled to recover damages at all, should these damages be paid by the county of Oxford, or Androscoggin ?

" If these questions are determined favorably to the plaintiff's right to recover of Oxford county, then the defendants are to be defaulted, otherwise a nonsuit is to be entered."

*( State* v. *The Inhabitants of Turner.)*

It further appeared, by copies of records presented, that at the August term, 1855, of the Supreme Judicial Court for the county of Androscoggin, an *indictment* was found against *The Inhabitants of the town of Turner*, for a bad road, (which road was that part of the location attempted to be discontinued,) and, at the next (January,) term, (the county attorney for Oxford appearing for the defendants,) the case was submitted to RICE, J., presiding, upon facts agreed; and, thereupon, the Judge decided that no part of the located road had been legally discontinued, and directed a default.

The plaintiffs contended that thus, by judgment of law, their lands had been taken for public use without compensation.

The several questions of law presented by the case, were argued by

*Record & Walton,* for plaintiffs, and by

*S. C. Andrews,* (county attorney for Oxford,) for defendants.

The opinion of the Court was drawn up by

MAY, J. — The highway, for the location of which the plaintiffs' lands were taken, appears to have been adjudged, in ac-

cordance with the statute, "to be of public convenience and necessity," by the County Commissioners of the several counties of Oxford, Cumberland, Kennebec and Franklin, and, also, in pursuance of such adjudication, and the statute, to have been duly located by the Commissioners of said county of Oxford, by whom damages were awarded to the several owners of the land taken for said highway, and lying within said county; and the several sums so awarded were ordered to be paid out of the treasury of said county in two years from the time when the proceedings on the petition for the location of said highway should be closed, or when said road should be opened. R. S. of 1841, c. 25, § § 23, 24, 25 and 26. These land owners, or some of them, among whom were the plaintiffs, being aggrieved at the action of the Commissioners of Oxford, in relation to the amount of damages awarded them, duly petitioned for an increase and redress of damages, and subsequently agreed with the parties adversely interested, upon a committee to estimate the same, which committee made due report of their proceedings at the regular term of their Court held in Sept. A. D. 1853. The damages of the petitioners were somewhat increased by the report of said committee, and their report in favor of the plaintiffs, *was then duly accepted and recorded by said County Commissioners,* and the proceedings on the original petition for the location of said highway were closed, and the record thereof completed. These facts are distinctly stated in the first count of the plaintiffs' writs, and are admitted.

The foregoing adjudications and proceedings being in conformity to the requirements of the statute, must stand, unless they have been in some way legally modified, annulled or reversed; and this, it is contended in defence, has been done by certain other proceedings which appear in the case.

It is admitted that the County Commissioners of Oxford, at their regular term held in September, 1853, "being of opinion that that portion of said location described in the proceedings hereinafter set forth, ought not to be laid out subject to such high damages, and they, therefore, ordered it

to be entered of record that they consider and adjudge that
the prayer of the petition of Alvin Leavitt and others, be, for
the reason aforesaid, denied in part, as is set forth in the fol-
lowing report." Then follows the report of the action of the
joint boards of County Commissioners, which acted upon the
original petition, made at a meeting held by them September
20, 1853, at the house of the plaintiff Conant, for the purpose
of considering the excessive damages allowed by the commit-
tees, in which they say, that, having duly considered the mat-
ter, "they do hereby adjudge and determine that the damage
awarded by said committees is in part excessive, and that the
road located on said petition be discontinued in part, viz. : —
commencing at Seth Bradford's north line, in Turner, and
extending said discontinuance to the northerly line of land
formerly owned by Lazarus LeBarron, in said Turner;" and,
it further appears by said report, that the Commissioners for
the county of Oxford, at the same time certified under their
hands, as follows, viz. : — "Pursuant to the foregoing joint
adjudication, we, the County Commissioners of Oxford county,
hereby revoke all damages awarded to owners and occupants
of land on the foregoing described road alterations." This
report was made at the September term of said County Com-
missioners, and then accepted and ordered to be recorded,
and the record shows that it was thereupon considered by the
Court, that the prayer of the petitioners be denied as to that
portion of the road lying between Seth Bradford's north line,
in Turner, and the northerly line of land formerly owned by
Lazarus LeBarron, aforesaid, and that the remainder of the
foregoing location be established as a public highway.

In view of the evidence in the case, three questions are
presented to the consideration of the Court.   1. "Was it
competent for the Commissioners, in manner and form afore-
said, to reject or discontinue a portion of said location for
excessive damages?"   2. "If such order and adjudication
was illegal, would the entire location stand, or would the
whole be thereby defeated?"   3. "If entitled to recover
damages at all, should these damages be paid by the county

of Oxford or Androscoggin ?" It is agreed, that if these questions are answered favorably to the plaintiffs' right to recover of the county of Oxford, then the defendants are to be defaulted, otherwise, a nonsuit is to be entered.

It is contended by the plaintiffs that, the first question should be answered in the negative. The defendants rely upon the provisions of the R. S. of 1841, c. 25, § 21, to justify such action. That section, in substance, provides that it shall be the duty of the County Commissioners, in cases where the land damages allowed by them, have been increased by the verdict of a jury on the report of a committee, *on inspection of any such report or verdict duly returned,* if they shall be of opinion that the alteration, location or discontinuance of the highway, as determined by them upon the hearing of the petition therefor, ought not to be made subject to such high damages, " *instead of accepting such report or verdict in full to enter upon the record of proceedings under the original petition, a judgment that the prayer of said original petition for such road to be laid out, altered or discontinued, shall not be granted for the reason aforesaid.*" By the very terms of the statute, jurisdiction over such reports or verdicts, is given to the County Commissioners of the county in which the lands lie; and this is so when the road is established and located through the joint action of several boards of County Commissioners, as in the present case. Such boards, when acting jointly, have nothing to do with the estimation of damages, except, so far as they may be influenced thereby, from a general view, in their adjudication upon the question of the convenience and necessity of the highway at the time of its alteration, location or discontinuance; nor have they any power over verdicts or reports of committees determining the amounts which shall be allowed. By the statute, this is all left to the action of the Commissioners for the county in which the lands lie, and by which the damages are to be paid.

It is apparent, therefore, from the language of the statute, as used in section twenty-one, above referred to, that the Commissioners who are authorized, under certain circumstances,

on inspection of any report or verdict relating to damages, to revoke or disaffirm *their* former proceedings, by denying the prayer of the original petitioners for the road, are the same Commissioners who are to pass upon the acceptance of such report or verdict, because they are to enter upon the record of proceedings, that said prayer shall not be granted, *instead of accepting any such verdict or report.* These Commissioners are the County Commissioners acting for their county alone.

There is no statute which authorizes the joint boards of Commissioners, after they have once performed their official duty in adjudicating upon the public convenience and necessity of the highway, to revoke their former decision, or any part of it, in this summary manner. Such subsequent action, whether for the reason of excessive damages or any other cause, is altogether unauthorized. *It is coram non judice.* The moment they had completed their duty as required by sections 23, 24, and 25 of the same statute, their joint power over the subject matter, ceased, and they could act no further, except upon a new petition. The action, therefore, of the joint boards of Commissioners, in Sept. 1853, relied upon in defence, by which they determined that the damage awarded by the committees, was in part excessive, and that the road as located, be discontinued in part, was null and void, and by reason of it, no part of the highway as originally located, was discontinued.

Nor, did the action of the County Commissioners of Oxford have any effect to annul or discontinue any part of said highway. This highway having been established by the joint action of several boards of County Commissioners, could not legally be discontinued by the separate action of any one of them. It is true, a literal construction of the statute, c. 25, § 21, before cited, may confer such power, but such action, if allowed, might render nugatory the joint action which is fully authorized by the subsequent sections of the statute. The authority to disaffirm all former proceedings by reason of excessive damages, extends to the whole highway as located, and not to a part of it. It is the entire prayer of the peti-

tioners which is to be denied, and not for the specific portion of the highway only, where excessive damages may, in the judgment of the Commissioners, have been assessed. An opposite construction might occasion great injustice to such land owners as had had their land taken for the road, and small damages allowed them, by reason of the advantages to them arising from the establishment and location of the highway as fixed upon and determined in the original proceedings. The expectation of such advantages may have made them satisfied with the damages as awarded by the Commissioners; and, for this reason, they may have taken no action for an increase of damages within the time allowed by the statute, when they certainly would have done so but for the personal benefits arising from the anticipated enjoyment of the highway as located, and perhaps entirely from that part attempted to be annulled or discontinued.

It is plain that the Commissioners of a single county cannot disaffirm the proceedings of two or more boards of Commissioners in establishing and locating a highway in different counties, so far as said highway is not within the limits of the county for which they are appointed; and, it is unreasonable to suppose that the Legislature intended, in cases of highways so established, to confer upon a minority of the same tribunal which established such highway, the power to annul or discontinue that part of it which was located within the general jurisdiction of such minority. Such a power would be sufficient to overthrow or defeat the deliberate adjudication of the majority. The summary power, therefore, which is conferred upon a single board of County Commissioners by the sections of the statute now under consideration, can be exercised only over such highways as were established and located by such board alone. There is nothing in the language of this section which extends it to such highways as require, in their establishment and location, the action of Commissioners of more than one county. If it had been the legislative intention to confer such extraordinary power over the action of a tribunal composed of different boards of Com-

missioners, upon a single constituent board, we cannot doubt that such intention would have been plainly expressed in the statute. *Banks & als., appellants,* 29 Maine, 288. The attempt, therefore, on the part of the Commissioners of Oxford, to discontinue a portion of the highway established by the joint action of the several boards, as set forth in the agreed statement of facts, was wholly inoperative. Our answer, therefore, to the first question, is, that it was not competent for the Commissioners to reject or discontinue a portion of said location for excessive damages.

It appearing from the foregoing discussion, that the order and adjudication for a discontinuance of a part of the highway, by reason of excessive damages, was wholly unauthorized by the statute, our answer to the second question is, that the entire original location stands, and no part of said highway is defeated, by any subsequent action appearing in the case.

The third and only remaining question is, whether the damages which the plaintiffs are entitled to recover, should be paid by the county of Oxford or Androscoggin. It appearing that all the proceedings, by which the lands of the several plaintiffs were taken and appropriated for said highway, were commenced and closed before the incorporation of the county of Androscoggin, and that the judgments on which these suits are founded are against the county of Oxford, the defendants alone are liable for the damages which were finally awarded, and which are sued for in these actions. R. S. of 1857, c. 18, § 29.

The only difference in the two cases now before us, consists in the fact, that the land of the plaintiff Conant, was affected only by that portion of the highway which was not attempted to be discontinued, while that of the plaintiff Jones, was upon the part so attempted to be discontinued. From the view we have taken, this fact is wholly immaterial, and the result is, that both plaintiffs are entitled to recover, and judgments are to be entered in their favor for the several

sums awarded by the committee, with interest from the time the same became payable.          *Defendants defaulted.*

TENNEY, C. J., CUTTING, GOODENOW, and DAVIS, J. J., concurred.